STOKER, Judge,
dissenting.
The majority finds that the trial court was not clearly wrong in casting Lloyds in judgment for the value of damaged cottonseed and awarding penalties and attorney’s fees for an arbitrary and capricious failure to pay the claim. I respectfully dissent from the majority holding for the following reasons.
The central issue in this case, as I view it, is what was Lloyds obligated to do pursuant to the terms of the contract of insurance between Lloyds and LCI, i.e. was it obligated to pay for a total loss, when the loss was partial, and take the salvage for itself. The trial court found, after examination of the facts, that, “Insured Lloyds seized upon the non payment [sic] by Billings to escape their contractual responsibility to their insured.” In affirming the trial court’s judgment, the majority states that:
“Lloyds was obligated under its policy to pay LCI for all direct losses caused by the fire. Lloyds does not dispute its obligation to pay LCI for the value of the destroyed cottonseed. However, Lloyds contends that the cottonseed was only partially damaged, since the remaining damaged cottonseed could be sold for salvage, and that Lloyds was therefore only obligated to pay LCI the difference in value between the cottonseed in its pre-fire condition and in its damaged condition after the fire. The damaged cottonseed remaining after the fire was of no utility to LCI and could not be sold by it in its retail business and its total loss was proximately caused by the fire. Lloyds was obligated to pay LCI for the value of the entire loss of the cottonseed. Whether or not Lloyds could mitigate its loss did not affect Lloyds’ obligation to pay LCI for the total loss.”
There is and' can be no factual dispute concerning the condition of the insured cottonseed after the fire. Some of the cottonseed was totally destroyed while approximately 1800 tons of cottonseed remained in a damaged condition. This damaged cottonseed was the seed that was shipped to Billings. The majority finds that in spite of the existence of damaged seed, which did indeed have a salvage value, Lloyds was obligated to pay on the basis of a total loss. This finding is made without reference to the contract of insurance between the parties. “A policy of insurance is a contract between the parties and is to be enforced in accordance with its terms when they are clear and unambiguous. Such a contract is to be given a fair, reasonable and sensible construction compatible with the apparent object and plain intention of the parties as expressed in the words of the agreement.” Odom v. Dixie Tie and Timber Co., 458 So.2d 561 (La.App. 3d Cir.1984); LSA-C.C. art. 1983.
The policy in question is a standard fire policy. LSA-R.S. 22:691, et seq. It provides coverage for direct loss by fire (loss resulting immediately and proximately from the occurrence). In the event of a loss, it is the obligation of the insured to (1) give immediate written notice of any loss; (2) protect the insured property from further damage; (3) separate the damaged *1312 and undamaged property; and (4) furnish a complete inventory of destroyed, damaged or undamaged property, showing quantities, costs, actual cash value and the amount of loss claimed. Within 60 days the insured must render a proof of loss stating among other things the actual cash value of each item of property and the amount of loss thereto.
Lloyds has the option to “take all, or any part, of the property at the agreed or appraised value, , on giving notice of its intention to do so within 30 days after receipt of the proof of loss herein required.” Moreover, the policy provides that “[t]here can be no abandonment to this Company [Lloyds] of any property.”
Abandonment, as it concerns insured property, is defined as “[a] relinquishment or cession of property by the owner to the insurer of it, in order to claim as for a total loss.” Black’s Law Dictionary (4th Ed. Rev.1978). A total loss, for purposes of fire insurance, as defined by Black’s, supra, is “[t]he complete destruction of the insured property by fire, so that nothing of value remains from it; as distinguished from a partial loss, where the property is damaged, but not entirely destroyed.”
There can be no question but that what LCI suffered was a partial loss, not a total loss. There can be no question, according to the terms of this contract, that it was Lloyd’s option to pay LCI the value of any damaged goods and take them for itself. Therefore, if the option should not be exercised, the basis of payment would be, in the case of a partial loss, the difference in value before the loss and after the loss. McKenzie and Johnson, Insurance Law and Practice, Sec. 334 in 15 Civil Law Treatise 654 (1986). See also 44 Am.Jur.2d § 1504-1505. The fire caused damage to some 1800 tons of cottonseed resulting in a diminished value of the seed, not total destruction of the seed.
The contract provides in clear and unambiguous terms that it is the insurer’s option to take any or part of the damaged property at the appraised or agreed upon value. Lloyds did not pay LCI for the value of the damaged seed and the proofs of loss signed and sworn to by LCI reflect a claim made by the insured equal to (1) the total cash value of the cottonseed before the fire, (2) reduced by the amount of the appraised salvage value of the damaged cottonseed. (Tr. 38, 39, 42 and 43.) There is nothing in the record which shows a transfer of ownership of the damaged cottonseed. Lloyds’ adjuster testified that some document translative of ownership would have been executed had it been the intention of the parties to transfer ownership. That testimony was uncontroverted, and I think that fact is significant.
Additionally, I do not find that the facts and circumstances support an inference or a conclusion that Lloyds did anything to assume ownership of the damaged seed and thus became responsible to LCI upon nonpayment by the seed purchaser, Billings. It is totally unrealistic to think that Lloyds would completely abdicate control of a salvage operation, for seed that it owned, to the insured and risk the loss that occurred in this case. Lloyds has a paramount interest in minimizing its losses and maximizing its gains. For these reasons, I am compelled to find that the trial court was clearly wrong, and Lloyds is not liable under the contract for the loss of the damaged seed. Accordingly, I respectfully dissent from the majority opinion.